[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-14608
Non-Argument Calendar
_____

D.C. Docket No. 0:14-cv-60354-CMA

ERIC WATKINS,

Plaintiff-Appellant,

versus

UNITED STATES POSTAL EMPLOYEE,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(May 4, 2015)

Before HULL, WILSON, and ROSENBAUM, Circuit Judges.

PER CURIAM:

This case ensued after plaintiff-appellant Eric Watkins was asked to leave a post office and was denied service because he refused to stop singing. Watkins brought suit against defendant-appellee Jackie White, the postal employee who asked Watkins to leave and did not allow Watkins to purchase a post office box after he disregarded her instruction to stop singing. Proceeding pro se, Watkins appeals the district court's order granting White's motion to dismiss for failure to state a claim, averring that White violated his right to free speech under the First Amendment to the United States Constitution.

On appeal, Watkins argues that he established a cognizable First Amendment claim because White retaliated against him for his exercise of free speech by ordering him to leave the post office and not permitting him to buy a mailbox while singing. Watkins contends that the lyrics to the song he was singing were "antigay" and that White restricted his speech based on its content. He further avers that White did not have the authority to restrict his speech. However, upon review of the record and consideration of the parties' briefs, we find that the restriction on Watkins's speech was reasonable and that White is entitled to qualified immunity. Thus, we affirm the district court's dismissal of the case.

**I.**

On February 13, 2014, Watkins filed his initial complaint against an unidentified female postal employee. He subsequently amended his complaint to

2

name Jackie White as the defendant in the action. According to the amended complaint, on January 9, 2013, Watkins went to a U.S. post office to purchase a post office box. While waiting in line, Watkins was singing what he describes as "an antigay song by superstar Reggea [sic] artist Buju Banton." White, a U.S. postal employee, called Watkins from the line, and Watkins asked to purchase a mailbox. White gave Watkins the application form, but she asked him to stop singing the song. Watkins refused.

White then denied service to Watkins and told him to leave the store or she would call the police. Watkins left the store and did not return for several months thereafter, subsequently bringing the present action. He avers he is entitled to $50,000 from White in damages for what he believes was a willful violation of his First Amendment right and the resulting "psychological injury of . . . fear, anxiety and embarrassment."

White moved to dismiss the case on several grounds, including insufficient service of process under Federal Rule of Civil Procedure 12(b)(5) and failure to comply with Rules 8 and 10(b). White also contended that Watkins failed to state a claim under Rule 12(b)(6); she averred that the singing of an "antigay" song is not protected, the regulation of Watkins's speech was reasonable, and she is entitled to qualified immunity.

On July 25, 2014, the district court found that Watkins's complaint failed to state a claim for relief and thus granted White's motion to dismiss. The court determined that White's request for Watkins to stop singing inside the lobby of a post office was a reasonable restriction on expression. The court also held that, in the alternative, White was entitled to qualified immunity for her actions.

Watkins filed a motion for reconsideration of the district court's order dismissing the case. On August 28, 2014, the court denied Watkins's motion for reconsideration. The court found that Watkins failed to raise any arguments regarding a change in controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice. Instead, Watkins simply expressed his disagreement with the court's order to dismiss and failed to address the court's ruling that White had qualified immunity from his suit. This appeal ensued.[1]

## II.

We review de novo a claim dismissed pursuant to Rule 12(b)(6) for failure to state a claim; in so doing, we accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Starship Enters. of Atlanta, Inc. v. Coweta Cnty., Ga.*, 708 F.3d 1243, 1252 (11th Cir. 2013).

---

[1] Liberally construing the pro se pleadings in this case, we find that Watkins's notice of appeal and subsequent brief properly appealed the underlying order dismissing the case, as Watkins's action is "the functional equivalent of what [Federal Rule of Appellate Procedure 3] requires" and was filed within the time specified by Rule 4. *See Rinaldo v. Corbett*, 256 F.3d 1276, 1278–79 (11th Cir. 2001).

Similarly, we review de novo the dismissal of a complaint based on a defendant's qualified immunity. *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003).

The ability of the government to constrain First Amendment activity on public property depends on the type of forum involved; thus, we analyze restrictions of expressive activity on government property using the public forum doctrine, under which government property is categorized as a traditional public forum, a designated public forum, or a nonpublic forum. *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45–46, 103 S. Ct. 948, 954–55 (1983); *see also Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 678–79, 112 S. Ct. 2701, 2705 (1992). Each type of forum is governed by a different set of standards. In a nonpublic forum—public property that is "not by tradition or designation a forum for public communication"—the government may reserve the forum for its intended purposes and impose time, place, and manner regulations. *Perry*, 460 U.S. at 46, 103 S. Ct. at 955. If these regulations on speech are reasonable and viewpoint neutral, there is no First Amendment violation. *See id.*

Additionally, when a government official is sued individually for an alleged violation of a constitutional right, federal law provides government officials with a qualified immunity. *Randall v. Scott*, 610 F.3d 701, 714 (11th Cir. 2010). "Qualified immunity offers complete protection for individual government officials performing discretionary functions 'insofar as their conduct does not

5

violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982)).  In considering whether an official is entitled to qualified immunity, the court must decide whether the facts alleged show the defendant violated a constitutional right and whether the right was clearly established.  *Id.* at 715.

## III.

On appeal, Watkins argues that he established a cognizable First Amendment claim because he was denied service and ordered to leave when he refused to stop singing.  Watkins also argues that White is not entitled to qualified immunity because White was a "mere postal employee" and that she did not have the authority to restrict his speech.  Additionally, there were no posted rules or regulations that restricted any particular speech or conduct in the post office.  Further, patrons were allowed to talk with each other or on their phones while awaiting service.  Therefore, Watkins argues, White was not authorized to restrict his speech and thus was not entitled to qualified immunity.

We conclude that the district court did not err in granting White's motion to dismiss for failure to state a claim.  Assuming without deciding that Watkins's speech was constitutionally protected, the claim was still due to be dismissed

because it took place in a nonpublic forum and the restriction on speech was reasonable.[2]

As the district court noted, "public place" and "public forum" are not synonymous; indeed, "[n]othing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities." *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 799–800, 105 S. Ct. 3439, 3447 (1985). The physical location of the post office is not a traditional public forum because the principal purpose of the post office is not the "free exchange of ideas.*" See id.* at 800, 802, 105 S. Ct. at 3448, 3449; *see also U.S. Postal Serv. v. Council of Greenburgh Civic Ass'ns*, 453 U.S. 114, 129, 101 S. Ct. 2676, 2685 (1981) ("[T]he First Amendment does not guarantee access to property simply because it is owned or controlled by the government."); *cf. United States v. Belsky*, 799 F.2d 1485,

---

[2] Depending on the circumstances, offensive speech may not receive the same protections as other potentially expressive activities. *See Roberts v. United States Jaycees*, 468 U.S. 609, 628, 104 S. Ct. 3244, 3255 (1984) ("[P]otentially expressive activities that produce special harms distinct from their communicative impact . . . are entitled to no constitutional protection."); *see also Hill v. Colorado*, 530 U.S. 703, 716, 120 S. Ct. 2480, 2489 (2000) ("[T]he protection afforded to offensive messages does not always embrace offensive speech that is so intrusive that the unwilling audience cannot avoid it."). However, assuming Watkins's singing of what he characterizes as an "antigay" song is an activity that would receive full First Amendment protection, the forum analysis nevertheless requires dismissal. Similarly, we need not address whether Watkins has established the additional requirements of a First Amendment retaliation claim because the extent to which the government may limit constitutionally protected speech depends on the nature of the forum. *See, e.g.*, *Perry*, 460 U.S. at 45–46, 103 S. Ct. at 955.

1489 (11th Cir. 1986) (determining that the walkways to post office buildings constitute a nonpublic forum).

Thus, we only examine the regulation of Watkins's speech for reasonableness and viewpoint neutrality. *United States v. Kokinda*, 497 U.S. 720, 727, 110 S. Ct. 3115, 3119–20 (1990) (plurality opinion) ("[R]egulation of speech activity where the Government has not dedicated its property to First Amendment activity is examined only for reasonableness."). We find that singing aloud disrupts the normal activity of the post office, irrespective of the song's content or the viewpoint contained therein. *See Int'l Soc'y for Krishna Consciousness,* 505 U.S. at 685, 112 S. Ct. at 2709 (upholding ban on solicitation in airport terminals because the solicitation would be disruptive); *Kokinda*, 497 U.S. at 736–37, 110 S. Ct. at 3124–25 (upholding regulation against solicitation on post office sidewalks because the solicitation was disruptive).

In "light of the purpose of the forum and all the surrounding circumstances," *Cornelius*, 473 U.S. at 809, 105 S. Ct. at 3453, regulating Watkins's speech by disallowing singing in the post office lobby was a reasonable restriction on his expression. Therefore, Watkins did not allege a cognizable claim under the First Amendment.

Additionally, we find that White is entitled to qualified immunity for her actions. Even if Watkins had established a cognizable claim under the First

8

Amendment, White's actions at the time the incident took place—asking Watkins to stop singing and refusing to serve him—constitute a job-related, discretionary function within White's powers to utilize. *See Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004) (defining discretionary function); *see also Amnesty Int'l USA v. Battle*, 559 F.3d 1170, 1184–85 (11th Cir. 2009) (finding that, even if a plaintiff adequately alleges a First Amendment violation, a defendant "will still be entitled to qualified immunity unless those rights were clearly established at the time the violations took place" (internal quotation marks omitted)).

Watkins has made no supportable allegations that any constitutional right to sing in the lobby of a post office was clearly established at the time of the incident. Instead, Watkins's refusal to stop singing may be fairly classified as disruptive. According to his complaint, Watkins was singing while in the service line and while White was attempting to assist him. Refusing service to a disruptive customer does not violate any clearly established and obvious federal law; nor were White's actions so clearly violative of the Constitution that White had to know that her response was impermissible regardless of prior case law. *See Randall*, 610 F.3d at 715–16. Thus, as an independent and additional basis for affirming the district court, we find that White was protected by qualified immunity and appropriately dismissed as a defendant.

9

## IV.

There is no support for the assertion that Watkins had a First Amendment right to sing any sort of song in the post office lobby while standing in the service line.  *Cf. U. S. Postal Serv.*, 453 U.S. at 133, 101 S. Ct. at 2687 ("[T]he guarantees of the First Amendment have never meant that people who want to propagandize protests or views have a constitutional right to do so whenever and however and wherever they please." (internal quotation marks omitted)).  In sum, while singing in the rain may result in a glorious feeling, singing in the post office is not a constitutional right.  We affirm the district court.[3]

**AFFIRMED.**

---

[3] Watkins also filed a motion with this court for leave to file his reply brief out of time. The motion is **GRANTED**; we note that we are already in receipt of Watkins's reply brief, and we have considered the same in ruling on his appeal.