[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-12396

Non-Argument Calendar

_____

ERIC WATKINS,

Plaintiff-Appellant,

versus

SANDY SULLIVAN,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:19-cv-61972-AHS

_____

2                    Opinion of the Court                    21-12396

Before WILSON, LUCK, and EDMONDSON, Circuit Judges.

PER CURIAM:

Eric Watkins, proceeding *pro se*,[1] appeals the district court's orders (1) dismissing in part Watkins's *pro se* 42 U.S.C. § 1983 complaint, (2) denying Watkins leave to amend his complaint, and (3) granting summary judgment in favor of Defendant Sandy Sullivan.  No reversible error has been shown; we affirm.

## I.

For this appeal, we accept these facts, viewed in the light most favorable to Watkins.  Between August 2011 and August 2015, Watkins (a homeless man who lives out of his car) visited daily a public park in Florida and used one of the park's pavilions to prepare his meals.  As part of his daily routine, Watkins would plug a cooking device into the pavilion's electrical outlet and -- using his own personal pair of pliers -- would turn on the pavilion's water shut-off valve so that he could fill buckets of water for his personal use.  Each time he visited the park, Watkins would also sing routinely the song titled "*Boom Bye Bye*" by reggae artist Buju

---

[1] We read liberally briefs filed by *pro se* litigants.  *See Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008).  We also construe liberally *pro se* pleadings. *See Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).

Banton: an "anti-gay" song with lyrics advocating violence against gay people.[2]

On the morning of 11 August 2015, Watkins carried out his usual routine, including preparing his breakfast and lunch using the pavilion's electricity and water. After Watkins finished using the pavilion's utilities -- and while Watkins was standing by his car -- he was approached by Sullivan, a park employee.[3]

Sullivan asked Watkins a question about his car. Watkins turned his back to Sullivan and continued moving his belongings from the pavilion to his car, all the while singing the anti-gay song.

According to Watkins, Sullivan became angry when she heard the lyrics of Watkins's song. Sullivan then purportedly told Watkins that she disliked the song, that she did not want Watkins to return to the park, and that she was calling the police.

---

[2] This same song has featured in several civil actions filed by Watkins alleging violations of the First Amendment. *See, e.g., Watkins v. Dubreuil*, 820 F. App'x 940 (11th Cir. 2020); *Watkins v. Pinnock*, 802 F. App'x 450 (11th Cir. 2020); *Watkins v. Cent. Broward Reg'l Park*, 799 F. App'x 659 (11th Cir. 2020); *Watkins v. Bigwood*, 797 F. App'x 438 (11th Cir. 2019); *Watkins v. U.S. Postal Emp.*, 611 F. App'x 549 (11th Cir. 2015).

That a person is singing a song with lyrics offensive to other people, in itself, does not shield the singer from the otherwise valid consequences of the singer's separate acts performed while he was singing.

[3] Sullivan says she was employed as a Park Ranger. Watkins contends Sullivan is a supervisor.

A police officer of the City of Fort Lauderdale Police Department responded to Sullivan's call.  When the officer arrived, Sullivan told the officer that Watkins had violated park rules by using a pair of pliers to turn on the pavilion's water pipe and by plugging in an electrical cooking device without a permit.  At Sullivan's request, the officer issued Watkins a trespass warning, explaining that Watkins would be arrested for trespassing if he remained on the premises.[4]  Watkins left the park without incident.

Watkins later filed *pro se* this section 1983 civil action against Sullivan in her individual capacity.  Watkins asserted three claims: (a) that Sullivan violated his First Amendment rights by issuing a trespass warning against Watkins because she did not like the song he was singing (Count 1); (b) that Sullivan deprived Watkins of his right to patronize the park by fabricating a false reason for issuing a trespass warning (Count 2); and (c) that Sullivan violated Watkins's right to challenge the trespass warning by not informing him about the appeal process (Count 3).

The district court granted in part and denied in part Sullivan's motion to dismiss.  The district court concluded that Watkins stated a claim for First Amendment retaliation in Count 1 and

---

[4] At times, Watkins seems to contend that Sullivan's statement to him before the officer arrived constituted a trespass warning.  At other times, Watkins asserts that Sullivan issued a trespass warning in the officer's presence.  These distinctions are not material to our analysis.  For purposes of this appeal, we accept that Sullivan caused the issuance of the trespass warning.

allowed that claim to proceed.  The district court, however, dismissed Count 2 as duplicative of Count 1.  Count 3 was dismissed for failure to state a claim.[5]

Following discovery, Sullivan moved for summary judgment on Count 1.  The district court granted summary judgment in favor of Sullivan, concluding that Sullivan was entitled to qualified immunity.  This appeal followed.

## II.

A.    Dismissal of Count 2

On appeal, Watkins challenges the district court's dismissal of Count 2 as duplicative of the First Amendment retaliation claim asserted in Count 1.  Watkins contends that Count 2 asserted a "liberty interest/due process violation," not a claim under the First Amendment.

In Count 1 of his complaint, Watkins claimed that Sullivan violated his First Amendment rights and deprived Watkins of his right to patronize the park when Sullivan (because she did not like the song Watkins was singing) issued an indefinite trespass warning.  In Count 2, Watkins asserted that Sullivan deprived him of his right to patronize the park "when she fabricated a false claim against [Watkins] . . . to hide the true reasons she was trespassing

---

[5] Watkins raises no challenge to the district court's initial dismissal of Count 3; that ruling is not before us on appeal.

[Watkins] from the park, which was because of the song [Watkins] was singing."

The district court construed reasonably Count 2 as duplicative of the First Amendment retaliation claim asserted in Count 1. Although phrased slightly differently, both Counts 1 and 2 assert that Sullivan deprived Watkins of his right to patronize the park in retaliation for Watkins's exercising his First Amendment right to free speech. The district court committed no error in dismissing Count 2 as impermissibly duplicative. *Cf. St. Luke's Cataract & Laser Inst., P.A. v. Sanderson*, 573 F.3d 1186, 1203 (11th Cir. 2009) (recognizing that a plaintiff may recover only once for a single injury).

B.    Leave to Amend Count 3

We review a district court's denial of a motion for leave to amend under an abuse-of-discretion standard. *See Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001).

Generally speaking, a *pro se* plaintiff must be given at least one chance to amend the complaint before dismissal. *See Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991), *overruled in part by Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (*en banc*) (holding that this rule does not apply to counseled plaintiffs). A district court need not grant leave to amend, however, if amendment would be futile. *Id.* Leave to amend is futile if the complaint, as it is proposed to be amended, would still

be subject to dismissal. *See L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1332 (11th Cir. 2020).

In its order granting in part Sullivan's motion to dismiss, the district court dismissed Count 3 of Watkins's initial complaint. The district court determined that Watkins failed to identify a constitutionally inadequate process. Instead, Watkins alleged only that Sullivan never informed Watkins about the process for challenging the trespass warning: conduct that did not render inadequate the underlying process itself. The district court also concluded that Watkins failed to allege facts sufficient to show that Sullivan -- a "park-level employee" -- had authority to promulgate and enact procedures or ordinances for challenging the trespass warning.

Watkins later moved for leave to amend his complaint, and he submitted a proposed amended complaint. Watkins's proposed amended complaint was nearly identical to his initial complaint except for two details: (a) Watkins asserted the due-process claim in Count 3 against Sullivan *in her official capacity*, and (b) Watkins alleged that Sullivan was the park's "Supervisor/Manager." The district court denied leave to amend, concluding that the proposed amendment added nothing new and reasserted arguments already addressed by the district court.

The district court abused no discretion in denying Watkins leave to amend his complaint. Watkins's proposed amendment failed to cure the defects already identified by the district court when the district court dismissed Count 3. Watkins neither pointed to a constitutionally inadequate process nor alleged facts

sufficient to demonstrate that Sullivan had the requisite final poli-cymaking authority to trigger municipal liability. *See Cooper v. Dillon*, 403 F.3d 1208, 1221 (11th Cir. 2005) ("Only those officials who have final policymaking authority may render the municipal-ity liable under § 1983.").

Because Count 3 in Watkins's proposed amended complaint was still subject to dismissal, amendment would have been futile. The district court acted within its discretion to deny Watkins leave to amend.

## C.    Summary Judgment

We review *de novo* a district court's grant of summary judg-ment, viewing the evidence and all reasonable factual inferences in the light most favorable to the nonmoving party. *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).

"Qualified immunity offers complete protection for govern-ment officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002). To avoid summary judgment based on qualified immunity, the plaintiff carries the bur-den and must show both that the government official violated a

federal right and that -- given the circumstances -- the right was already clearly established when the official acted. *See id.* The doctrine of qualified immunity, when applied properly, "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

To establish a claim for retaliation under the First Amendment, a plaintiff must show three things: (1) that he engaged in constitutionally-protected speech; (2) that he "suffered adverse conduct that would likely deter a person of ordinary firmness from engaging in such speech;" and (3) a causal connection between his protected speech and the adverse conduct. *Brannon v. Finkelstein*, 754 F.3d 1269, 1274 (11th Cir. 2014). For purposes of this appeal, we accept that Watkins's singing constituted protected speech and accept that the complained-of trespass warning was a sufficiently adverse act. This appeal focuses only on whether a sufficient causal relationship existed between the trespass warning and Watkins's singing.

When causation is contested, a defendant is entitled to qualified immunity "[w]here the facts assumed for summary judgment purposes . . . show mixed motives (lawful *and* unlawful motivations) and pre-existing law does not dictate that the merits of the case must be decided in plaintiff's favor." *Foy v. Holston*, 94 F.3d 1528, 1535 (11th Cir. 1996) (emphasis in original).

Watkins has presented evidence that Sullivan had him trespassed-warned because she disliked the lyrics of the song he was singing: an unlawful reason. In Watkins's declaration made under

penalty of perjury, he stated that Sullivan told him expressly that she disliked the song and that she wanted him to leave the park because of the song.

Sullivan, however, has offered evidence of an alternative lawful basis for having Watkins trespass-warned.  In Sullivan's sworn affidavit, Sullivan stated that she observed Watkins turning on the pavilion's water pipe using his own pair of pliers and observed Watkins plugging a cooking device into the pavilion's electrical outlet.  Sullivan said Watkins had no permit or authorization to use the pavilion's water and electrical resources.  The pertinent police officer also stated in a sworn affidavit that Sullivan reported that Watkins had violated park rules by using the pavilion's water and electricity.  The officer attested that he issued a trespass warning based on Watkins's unauthorized use of the pavilion, not based on Watkins's singing.

Watkins admits that he used the pavilion's water and electrical facilities that morning but denies that Sullivan saw him do so. We have said that a plaintiff may create a genuine dispute of material fact based on uncorroborated, self-serving statements made in an affidavit. *See United States v. Stein*, 881 F.3d 853, 858-59 (11th Cir. 2018) (*en banc*).  Such statements, however, must be based on personal knowledge.  *See id.*; *Pace v. Capobianco*, 283 F.3d 1275, 1278-79 (11th Cir. 2002) (explaining that, to raise a genuine issue of material fact sufficient to defeat summary judgment, an affidavit must be made on personal knowledge).  Here, Watkins had no (in reality, can have no) personal knowledge about what Sullivan did

or did not see on the pertinent day. Nor has Watkins sworn to objective facts that seem inconsistent with Sullivan's sworn statement that she observed Watkins using the pavilion's utilities. Particularly given Watkins's admitted use of the pavilion's water and electricity -- activities that happened out in the open – Watkins's own statement that Sullivan never saw him using the pavilion's water and electricity that morning cannot create a genuine dispute of fact or contest Sullivan's sworn statement that she observed him doing so.

Watkins also contends that he did not need a permit to use the pavilion's water and electrical facilities. Watkins says he was told by park management in 2011 that "the pavilion and its facilities are open for free use by its patrons except for purposes of an event." Watkins also contends that park management -- including Sullivan -- had a "custom and practice" of allowing patrons to use the pavilion's electric and water utilities without a permit for non-event activities. For purposes of summary judgment, we must accept Watkins's statements as true.

Notwithstanding the park management's custom of generally allowing non-event patrons to use the pavilion's utilities without a permit, a reasonable park employee in Sullivan's position could have concluded that Watkins's specific conduct -- especially Watkins's using a pair of personal pliers to turn on the pavilion's water supply -- constituted an unauthorized use of the park's facilities. Given the pertinent rules and regulations governing the use of Florida's parks, a reasonable park employee in Sullivan's place

could have determined that Sullivan acted properly in response to Watkins's specific conduct: properly even if Sullivan herself might also have been subjectively motivated in part by unlawful reasons. *See Foy*, 94 F.2d at 1536 (concluding that defendant child custody workers acted objectively reasonably for purposes of qualified immunity when, "given the circumstances and state of the law, a reasonable child custody worker could have considered Defendants' conduct arguably proper even if Defendants were motivated in substantial part by unlawful motives"); *see also* FT. LAUDERDALE, FLA., CODE OF ORD. § 19-52 (2015) (making it "unlawful for any person to misuse any public property at the public picnic areas or to fail to comply with the regulations pertaining to such picnic areas"); Ft. Lauderdale, Fla., Parks & Recreation Rules & Regulations 11.3 (providing that a person who is found violating the parks' rules "shall be ordered to leave" the park "for a minimum 24-hour period.").

The record evidences that Sullivan's efforts to have Watkins removed from the park were motivated at least in part by a lawful reason: Watkins's unauthorized manner of use of the pavilion facilities. That Sullivan subjectively might also have been motivated in part by an unlawful reason (her dislike of Watkins's singing) does not deprive her of qualified immunity. The law pre-existing this incident in 2015 did not clearly rule out a valid trespass warning for Watkins in the circumstances facing Sullivan. Given the circumstances presented in this case, Sullivan is entitled to qualified immunity. *See Brannon*, 754 F.3d at 1278-79 (concluding that

defendant was entitled to qualified immunity on a claim for First Amendment retaliation because there existed evidence of both lawful and unlawful motivations for defendant's conduct and because pre-existing law did not dictate that the merits of the case be decided in plaintiff's favor); *Foy*, 94 F.3d at 1536. We affirm the district court's grant of summary judgment.

AFFIRMED.